IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BOBBY A. SHULL,** | : | Civil No. 1:19-cv-00715 |
| **Plaintiff,** | : | |
| v. | : | |
| **SYNCHRONY BANK, and EXPERIAN INFORMATION SOLUTIONS, INC.,** | : | Judge Sylvia H. Rambo |
| **Defendants.** | | |

## **M E M O R A N D U M**

Before the court is Defendant Synchrony Bank's ("Synchrony") Motion to Dismiss Plaintiff's Complaint. (Doc. 13.) For the reasons stated below, the court will deny the motion.

### **I.  BACKGROUND**

Plaintiff Bobby A. Schull ("Plaintiff") accrued credit card debt through creditor Synchrony and did not pay off the balance. Synchrony has a statutory duty to furnish accurate credit information to the consumer reporting agencies ("CRAs"). The furnished credit information appears in the CRAs' consumer credit reports and impacts individuals' creditworthiness. Synchrony reported Plaintiff's outstanding debt, which was then reflected on his credit reports.

On September 22, 2017, Synchrony issued Plaintiff a "Cancellation of Debt" 1099-C informational tax form. On the form, Synchrony selected identifiable event code "G," which indicates "a discharge of indebtedness because of a decision or a

1

defined policy of the creditor to discontinue collection activity and cancel the debt." Synchrony submitted the 1099-C to the Internal Revenue Service ("IRS"), which generally requires the debtor to report the discharged debt as taxable income. Plaintiff alleges he paid taxes on the discharged debt.

After issuing the 1099-C to Plaintiff, Synchrony continued to report the outstanding balance to the CRAs, and thus the credit card debt remained on Plaintiff's credit reports. On April 4, 2018, Plaintiff wrote to Defendant Experian Information Services, Inc. ("Experian") to dispute the accuracy of the outstanding balance. Plaintiff alleges that Experian notified Synchrony of the written dispute. Experian replied to Plaintiff that Synchrony had verified the accuracy of the information. The outstanding balance remained on Plaintiff's credit reports.

On April 26, 2019, Plaintiff sued Synchrony for willfully or negligently violating 15 U.S.C. § 1681s-2(b) of the Fair Credit Reporting Act ("FCRA"). Plaintiff alleges that Synchrony canceled Plaintiff's debt, and thus, Synchrony's continued reporting of Plaintiff's outstanding debt to the CRAs is inaccurate. Plaintiff further alleges that Synchrony failed to investigate his dispute in failing to review underlying account information and failing to contact Plaintiff or third parties. Plaintiff alleges Synchrony's continued and erroneous reporting of an outstanding balance on his account harmed Plaintiff's credit history and creditworthiness.

On May 28, 2019, Synchrony filed a 12(b)(6) motion to dismiss because it claims the furnished information was accurate, thus precluding a violation under 15 U.S.C. § 1681s-2(b). (Doc. 13, p. 7.) Synchrony argues that issuing a 1099-C merely charges off the account and does not discharge the underlying debt. (*Id.*, p. 1.)

In Plaintiff's complaint and brief opposing the motion to dismiss,[1] Plaintiff asserts several facts to support that the debt was in fact canceled. The 1099-C form Synchrony issued Plaintiff is itself called "Cancellation of Debt." The identifiable event code Synchrony selected indicated it was the decision or policy of the creditor to discontinue collection and cancel the debt. After issuing the 1099-C, Synchrony subsequently discontinued efforts to collect the debt and stopped sending periodic account notices.

The motion has been fully briefed and is thus ripe for review.

## II. **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the

---

[1] The parties dispute whether the court should consider Plaintiff's opposition brief because it was filed seven days late. The court finds that the late filing did not substantively delay the case or prejudice Synchrony. Furthermore, the Third Circuit has "repeatedly stated [its] preference that cases be disposed of on the merits whenever practicable." *Hrirtz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir. 1984). Here, by analogy, the court prefers to consider Plaintiff's arguments rather than to disregard them on procedural grounds.

Moving forward, Plaintiff's counsel must use greater care in calendaring. Plaintiff is also warned that, in the future, filing a motion with "uncontested" in its title without including a certificate of concurrence will result in the motion being stricken. *See* M.D. Pa. L.R. 7.1.

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, --- F. App'x ----, 2019 WL 4187372, at *3 (3d Cir. Sept. 4, 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

"Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy. In doing so, Congress sought to preserve the consumer's privacy in the information maintained by consumer reporting agencies." *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009) (internal quotation marks omitted). Once notified of a dispute, a furnisher of credit information has statutory duties, *inter alia*, to investigate the disputed information and to correct information found to be inaccurate. 15 U.S.C. § 1681s-2(b)(1). To establish a violation

> [u]nder the statutory framework and clear language of the statute, therefore, a consumer must first alert the credit reporting agency that reported the allegedly erroneous information of a dispute. It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate. It is only when the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant under § 1681s–2(b).

*SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011).

Reasonableness of the investigation is determined based on a balancing of "the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014) (internal citation omitted). Regarding the requirement of "accurate" information, "even if the

information is technically correct, it may nonetheless be inaccurate if, through omission, it creates a materially misleading impression." *Id.* (internal quotation marks and brackets omitted). To survive this motion to dismiss, Plaintiff must plausibly allege "(1) that he notified a credit reporting agency of the dispute under § 1681i, (2) that the credit reporting agency notified the party who furnished the information under § 1681i(a)(2), and (3) that the party who furnished the information failed to investigate or rectify the disputed charge…." *Vassalotti v. Wells Fargo Bank, N.A.*, 815 F. Supp. 2d 856, 863–64 (E.D. Pa. 2011) (internal citation and brackets omitted).

Here, Synchrony does not argue that Plaintiff failed to plead any of the required elements. Rather, Synchrony argues that Plaintiff's claim cannot succeed unless the information was in fact inaccurate or materially misleading. *See Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (holding that a plaintiff must show "actual inaccuracy" to establish a claim against a furnisher of credit information under 15 U.S.C. § 1681s-2(b)). Synchrony claims its report was accurate and that it did not cancel Plaintiff's debt by issuing the 1099-C. Synchrony argues that issuance of the 1099-C does not, as a matter of law, discharge the underlying debt. (Doc. 13, p. 4.)

The parties cite non-binding and conflicting case law regarding the legal import of issuing a 1099-C. Synchrony cites cases holding that the issuance and

filing of a 1099-C does not legally extinguish the underlying debt. *See e.g.*, *In re Zilka*, 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009); *Owens v. Comm'r*, 67 F. App'x 253, 2003 WL 21196200, at *3 (5th Cir. May 15, 2003); *Fed. Deposit Ins. Corp. v. Cashion*, No. 1:11-CV-72, 2012 WL 1098619, at *7 (W.D.N.C. Apr. 2, 2012); *United States v. Reed*, No. 3:09–CV–210, 2010 WL 3656001, at *2-3 (E.D. Tenn. Sept. 14, 2010); *Leonard v. Old Nat'l Bank Corp.*, 837 N.E. 2d 543, 545-46 (Ind. Ct. App. 2005). Still other courts found that the mere issuance of the 1099-C form does not constitute a legal admission that the debt was canceled. *See Verdini v. First Nat'l Bank of Pa.*, 135 A.3d 616, 621 (Pa. Super. Ct. 2016); *Ware v. Bank of Am. Corp.*, 9 F. Supp. 3d 1329, 1340 (N.D. Ga. 2014).

Supporting Synchrony's position, the plain language of the applicable IRS regulation states that a creditor may be obligated to file a 1099-C even if the creditor did not in fact discharge the debt.[2] On the form, the creditor must select an

---

[2] The Internal Revenue Service (IRS) requires that

> any applicable entity . . . that discharges an indebtedness of any person . . . must file an information return on Form 1099-C with the Internal Revenue Service. Solely for purposes of the reporting requirements of [this section], a discharge of indebtedness is deemed to have occurred . . . if and only if there has occurred an identifiable event described in paragraph (b)(2) of this section, *whether or not an actual discharge of indebtedness has occurred on or before the date on which the identifiable event has occurred.*

26 C.F.R. § 1.6050P-1(a) (emphasis added).

"identifiable event,"[3] the date of which becomes the effective date for the discharge of indebtedness for purposes of the informational report. 26 C.F.R. § 1.6050P-1(b). The IRS issued guidance to clarify that the IRS "does not view the 1099-C as an admission by the creditor that it has discharged the debt and can no longer pursue collection." I.R.S. Info. Letter, 2005-0207 (Oct. 7, 2005).

Courts disagree whether the issuance of a 1099-C should be considered prima facie evidence that a loan was in fact canceled. *See In re Washington*, 581 B.R. 150, 157 (Bankr. D.S.C. 2017) (holding that issuance of the 1099-C should "not be considered prima facie evidence that the loan was cancelled"); *contra Amtrust Bank v. Fossett*, 224 P.3d 935, 938 (Ariz. Ct. App. 2009) (holding that issuance of the 1099-C after debt was written off is prima facie evidence that debt had been discharged by creditor and is sufficient to create an issue of fact).

Other courts have held that it would be inequitable for creditors to continue to hold debtors liable for the debt, given the tax consequences of the 1099-C. *See e.g.*, *In re Crosby*, 261 BR 470, 474 (Bankr. D. Kan. 2001). The 1099-C issuance negatively impacts debtors because they must generally report the debt discharge as income. *See Franklin Credit Mgmt. Corp. v. Nicholas*, No. CV980546721S, 2001

---

[3] On the 1099-C form, identifiable events include: debt discharge under title 11 bankruptcy; debt unenforceable in a receivership, foreclosure, or similar proceeding; debt for which the statute of limitations for collection has expired; debt cancelled as a foreclosure remedy; debt unenforceable pursuant to probate or similar proceeding; debt discharged by creditor-debtor agreement; and *debt discharged pursuant to the creditor's decision or defined policy to discontinue collection activity and discharge debt* (emphasis shows Synchrony's election on the 1099-C).

8

WL 893894, *3 (Conn. Super. Ct. July 12, 2001). This matter of equity is raised in this case where Plaintiff alleged paying taxes on the cancelled debt.

Significantly, none of the cases held that it was appropriate for a court to dismiss a consumer's claim at the pleading stage on the basis that the 1099-C did not discharge the debt as a matter of law. In fact, after holding that the 1099-C should not be prima facie evidence the loan was canceled, the court in *In re Washington* stated that it must instead look to the *entire record* to determine if the creditor canceled the debt. *In re Washington*, 581 B.R. at 157. In the pleading stage of the present case, Plaintiff need not *prove* but merely plead plausibly that the report was in fact inaccurate and that Synchrony failed to reasonably investigate the written dispute of the report's accuracy and to correct inaccuracies, as required under 15 U.S.C. § 1681s-2(b).

The Western District of Kentucky in *Johnson v. Branch Banking & Trust Co.* arrived at a similar conclusion in denying a motion to dismiss raised by creditor bank where plaintiff consumers brought a § 1681s-2(b) claim. No. 3:18-CV-150, 2018 WL 4492478, *2 (W.D. Ky. Sept. 19, 2018). The *Johnson* parties argued whether the 1099-C canceled the debt, but the court found it unnecessary to adopt either opposing view of the form's effect, since at the motion to dismiss stage, the court analyzes the plausibility of the pleadings rather than the weight of the evidence. *Id.* at *2-3. Even though the issuance of the 1099-C standing alone does not prove that

9

the debt was discharged as a matter of law, the debt in fact may have been discharged.

Here, Plaintiff pleaded several facts that reasonably permit an inference that the debt was in fact discharged: the name of the issued "Cancellation of Debt" 1099-C form, the identifiable event code selected on the form, and the creditor's activities regarding collection efforts and periodic account notices. Whether the debt was canceled is a factual, context-specific inquiry. Thus, the fact that the 1099-C does not cancel debt as a matter of law is an improper basis for a 12(b)(6) disposition. Taking the allegations in the complaint to be true and drawing all reasonable inferences in favor of the plaintiff, the court finds that Plaintiff has plausibly pleaded that Synchrony failed to reasonably investigate and rectify the disputed balance.

## IV. **CONCLUSION**

Plaintiff stated an FCRA claim under 15 U.S.C. § 1681s-2(b) that is plausible on its face. The court therefore denies Synchrony's motion to dismiss. An appropriate order shall follow.

            s/Sylvia H. Rambo
            SYLVIA H. RAMBO
            United States District Judge

Dated: March 26, 2020